NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| PEDRO PEPIN CABRERA, | : | |
| | : | **Civil Action No. 24-7780-ES-AME** |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION AND ORDER** |
| | : | |
| VERIZON, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ESPINOSA, U.S.M.J.**

This matter is before the Court on the unopposed motion to compel arbitration and to stay this action brought by defendant Verizon Online LLC ("Verizon") [D.E. 8]. The motion was referred for decision by the Honorable Esther Salas, U.S.D.J. pursuant to 28 U.S.C. § 636(b).[1] The Court has considered this motion based on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, Verizon's motion is granted.

**I.   BACKGROUND**

On June 11, 2024, pro se plaintiff Pedro Pepin Cabrera ("Plaintiff") filed this action in the Superior Court of New Jersey, alleging Verizon unlawfully disclosed his personal information to third-party credit reporting agencies in violation of the Fair Credit Reporting Act

---

[1] The Third Circuit has held that a motion to compel arbitration and stay litigation concerns a non-dispositive matter and may therefore be decided by a magistrate judge. *Virgin Islands Water and Power Auth. v. Gen. Electric Int'l Inc.*, 561 F. App'x 131, 134 (3d Cir. 2014) ("A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein. Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation.").

("FCRA"), 15 U.S.C. § 1681, *et seq*., and claiming he sustained at least $52,500 in damages thereunder. (Compl. ¶¶ 1-3.) Verizon removed the action to this Court on July 15, 2024, asserting subject matter jurisdiction pursuant to 28 U.S.C. § 1331. It now moves for an order compelling arbitration of Plaintiff's claims under a contractual arbitration provision in the agreement entered into when Plaintiff opened an account for Verizon internet service.

According to the Declaration filed by Verizon in support of this motion, opening a Verizon internet service account requires all customers to complete an online order form containing the following language:

> You're almost done. Take a look at our terms of service then check the box and you'll be good to go.
>
> By agreeing, you understand that your services are governed by these terms, including limitations of liability and settlement of disputes by single arbitration, as well as the terms of your plan.

(Decl. of Theresa Trainor, ¶¶ 5-6 and Ex. B.) A hyperlink associated with the words "terms of service" in the foregoing statement gives a customer access to a webpage setting forth those terms in their entirety. (*Id.* ¶ 7 and Ex. B.) The linked document, entitled "Terms of Service," can be viewed and printed by the customer during the order placement process. (*Id.* ¶ 7.)

As to arbitration, the Terms of Service document contains the following notice on the first page:

> NOTICE OF ARBITRATION AGREEMENT
>
> **THIS AGREEMENT CONTAINS A BINDING ARBITRATION CLAUSE AND A CLASS ACTION WAIVER. IT REQUIRES THAT DISPUTES BE RESOLVED BY ARBITRATION RATHER THAN CLASS ACTION LAWSUITS OR JURY TRIALS (EXCEPT FOR MATTERS THAT MAY BE TAKEN TO SMALL CLAIMS COURT). PLEASE SEE SECTIONS 15-18 FOR MORE INFORMATION.**

(*Id.*, Ex. C at 1.) The notice is displayed in all caps, bold font. The referenced Section 18 contains a two-page arbitration agreement, also set forth in all caps. The arbitration agreement states, in relevant part: "You and Verizon both agree to resolve disputes only by arbitration or in small claims court. You understand that by this agreement you are giving up the right to bring a claim in court or in front of a jury." (*Id.*, Ex. C § 18.) It also states that the "Federal Arbitration Act applies to this Agreement" and that "[f]or claims over $10,000 the AAA's Arbitration Rules will apply." (*Id.*)

According to the Terms of Service, the customer accepts the agreement for internet service with Verizon in any one of various ways: "Acceptance by you of this Agreement occurs upon the earlier of (a) your acceptance of this Agreement electronically during an online order, registration or when installing the Software or the Equipment; (b) your use of the Service; or (c) your retention of the Software or Equipment we provide beyond thirty (30) days following delivery." (*Id.*, Ex. C at 1.) Additionally, the online order form that a customer must complete and submit contains a section labeled "Terms of service," which states "Required," indicating it must be completed before the order for Verizon internet service may be placed. (*Id.*, Ex. B.) That section of the form contains an option box next to the words "**I understand and agree to the terms of service.**" (*Id.*) (emphasis in original). This box must be checked by the customer, expressing his or her agreement, before proceeding to place the order. (*Id.* ¶ 8.)

Verizon's business records, proffered by declaration of its employee, show Plaintiff placed on online order for Verizon internet service and opened an account on December 1, 2020, in accordance with the foregoing procedure. (*Id.* ¶ 4 and Ex. A.)

3

## II. DISCUSSION

### A. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* states that "a written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . *shall* be valid, irrevocable, and enforceable …." 9 U.S.C. § 2 (emphasis added). The statute "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 522 (3d Cir. 2009). The Third Circuit has long recognized that the FAA represents "a strong federal policy in favor of resolving disputes through arbitration." *Id.* at 523. Where, as in this case, an arbitration agreement relates to "a transaction involving [interstate] commerce"—here, a transaction for internet service with Verizon—the agreement falls within the scope of the statute, and the FAA therefore governs. 9 U.S.C. § 2; *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

Under the FAA, a party may petition the Court to enforce an arbitration agreement. 9 U.S.C. § 4. On such a motion, the Court must order arbitration "in accordance with the terms of the agreement" when the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.* Upon finding the parties' dispute must be referred to arbitration under the agreement, the Court must stay litigation. *See* 9 U.S.C. § 3.

Typically, a motion to compel arbitration requires the Court to determine that "'(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement.'" *Young v. Experian Info. Solutions, Inc.*, --- 4th ---, No. 23-2953, 2024 WL

4509767, at *4 (3d Cir. Oct. 17, 2024) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). However, under the FAA, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer and White Sales, Inc., 586 U.S. 63, 67-68 (2019) (*quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). The Supreme Court has so held, reasoning that "an 'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'" *Id.* at 68 (quoting *Rent-A-Center*, 561 U.S. at 70). Thus, "when the parties' contract delegates the arbitrability question to an arbitrator, a court … possesses no power to decide the arbitrability issue." *Id.*

The Third Circuit has "outlined two possible standards for district courts to use when considering motions to compel arbitration." *Young*, 2024 WL 4509767, at *3 (citing *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013)). Where the existence of a valid arbitration agreement is apparent from the face of the complaint, a motion to dismiss standard will apply. *Id.* Where the complaint does not clearly set forth that the parties agreed to arbitrate or one party responds to the motion to compel with facts disputing the agreement, a summary judgment standard will apply, allowing a "'restricted inquiry into factual issues'" concerning whether "'there was a meeting of the minds on the agreement to arbitrate.'" *Id.* at *4 (quoting *Guidotti*, 716 F.3d at 774).

5

Here, because it is not facially apparent from the Complaint that a valid arbitration agreement exists, a summary judgment standard applies to determine whether the Court must compel arbitration. Plaintiff has not opposed this motion, and thus the Court considers the facts proffered by Verizon as uncontroverted.[2]

### B. Analysis

Verizon raises two arguments in support of its motion. First, it argues that the Court must compel arbitration because the arbitration agreement between the parties delegates questions of arbitrability to the arbitrator. Second, Verizon contends that, even in the absence of a such a delegation provision, arbitration would be required under the traditional two-part analysis, because this dispute falls within the scope of the arbitration agreement.

As to the delegation of arbitrability, it is well-established that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 586 U.S. at 69 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Unless the agreement to delegate arbitrability is specifically challenged, the Court "must enforce it under [FAA] §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72; *see also Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024) (holding "where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision,

---

[2] The Third Circuit has instructed that, even where a summary judgment standard applies to a motion to compel arbitration, the Court should proceed to rule on the record presented, without need for discovery, if there is no factual dispute. *Young*, 2024 WL 4509767. at *5. ("In the absence of a factual dispute, there is nothing to discover and thus no need to delay a decision on the motion to compel.").

courts must send all arbitrability disputes to arbitration."). In *Young v. Experian Information Solutions*, the Third Circuit recently held that the "rule on delegability applies even to form contracts," such as, in that case, an online agreement the plaintiff clicked through to create her credit monitoring account. *See* 2024 WL 4509767, at *6.

Verizon asserts that, here, Plaintiff agreed to delegate threshold arbitrability issues, pointing to the arbitration agreement's express statement that the AAA rules apply. That statement, Verizon maintains, incorporates the following rule, from the applicable AAA Consumer Rules:

> R-14. Jurisdiction
>
> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.
>
> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

American Arbitration Association, Consumer Arbitration Rules, https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf (last visited Nov. 18, 2024).

Courts in this District and other jurisdictions have consistently concluded that an agreement's incorporation by reference of the AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate gateway issues. *See Romanov v. Microsoft Corp.*, No. 21-3564, 2021 WL 3486938, at *5 (D.N.J. Aug. 9, 2021) (compelling arbitration where the plaintiff clicked acceptance of an onscreen agreement for use of the defendant's online gaming service, including an arbitration agreement that "expressly indicate[s] that the AAA Consumer

7

Arbitration rules govern arbitration."); *Carrone v. UnitedHealth Group, Inc.*, No. 20-5138, 2020 WL 4530032, at *3 (D.N.J. Aug. 6, 2020) (finding agreement's incorporation by reference of AAA rules granted arbitrator power to decide whether dispute was arbitrable, noting numerous courts have so held); *see also Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020) (holding incorporation of AAA Rules into the parties' agreement constitutes clear evidence arbitrability is delegated to an arbitrator); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding where "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *Nguyen v. OKCoin USA Inc.*, No. 22-6022, 2023 WL 2095926, at *4 (N.D. Cal. Feb. 17, 2023) (granting motion to compel arbitration where arbitration agreement included reference to AAA Consumer Rules). The same conclusion applies here.

     As a preliminary matter, the Court is satisfied that Plaintiff and Verizon entered into a valid contract when Plaintiff opened his internet service account. The uncontroverted evidence demonstrates that, in completing the online form to open an account, Plaintiff received notice of the service's terms and conditions, including the arbitration agreement, and expressly indicated his acceptance of those terms in completing the order. The arbitration agreement, in turn, expressly incorporates the AAA Rules, which empower the arbitrator to decide the enforceability and scope of the Arbitration Agreement. As such, Plaintiff's completed order for internet service with Verizon manifests the parties' clear and unmistakable agreement to delegate threshold arbitrability issues to the arbitrator.

Plaintiff has not challenged either the arbitration agreement's formation or the validity of the agreement to delegate arbitrability, and thus there is "nothing is left for the District Court to decide pursuant to the FAA." *Young*, 2024 WL 4509767, at *6. The Court must compel the parties to submit their dispute to arbitration under FAA Section 4 and, pending arbitration, must stay the action under Section 3 of the statute. *Id.*

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS** on this 18th day of November 2024,

**ORDERED** that Verizon's motion to compel arbitration and stay this action [D.E. 8] is **GRANTED**; and it is further

**ORDERED** that, pursuant to the FAA, 9 U.S.C. § 4, Plaintiff shall engage in arbitration of his claims in accordance with his agreement with Verizon; and it is further

**ORDERED** that, pursuant to the FAA, 9 U.S.C. § 3, this action is stayed pending the completion of arbitration; and it is further

**ORDERED** that the Clerk shall mark this action administratively terminated during the pendency of the stay.

/s/ *André M. Espinosa*  
ANDRÉ M. ESPINOSA  
United States Magistrate Judge